UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

JESUS DELGADO,

                      Plaintiff,

                                               25 CV 2360

        -against-

                                               COMPLAINT

THE CITY OF NEW YORK, NYPD OFFICER DORIS
MIRANDA (Shield 3167, 52nd Precinct), NYPD OFFICER
JOSEPH PACIFICO (Shield 4577, 52nd Precinct), and
NYPD OFFICERS AND SUPERVISORS JOHN and
JANE DOES 1-10,

                      Defendants.
-------------------------------------------------------------------------X

        Plaintiff, by his attorney, Joel Berger, Esq., for his complaint alleges, upon information and belief, as follows:

### *NATURE OF THE ACTION*

        1.    This is an action to recover money damages arising out of the violation of plaintiffs' rights under the Constitution and laws of the United States and the State of New York, by employees of the New York City Police Department (NYPD) on January 4, 2024, including false arrest, malicious prosecution, and the excessive and unnecessary use of force. Prosecution was declined by the District Attorney's office on the two charges alleged against plaintiff for which he was initially arrested (criminal trespass and obstructing governmental administration), and the other two (resisting arrest and criminal mischief) were dismissed without objection by the District Attorney's office within approximately 100 days of the incident.

### *JURISDICTION AND VENUE*

        2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, and Fourteenth Amendments to the Constitution of the United States.

        3.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

## *PENDENT JURISDICTION*

5. This Court also has jurisdiction over plaintiffs' state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6. On March 26, 2024, within ninety days after the claims alleged in this complaint arose, a Notice of Claim verified by plaintiff was duly served upon the Comptroller of the City pursuant to Sec. 50-e of the General Municipal Law, and assigned claim number 2024PI01187.

7. On June 5, 2024, a hearing on the Notice of Claim was conducted pursuant to Sec. 50-H of the General Municipal Law.

8. At least thirty days have elapsed since the service of the Notice of Claim, and adjustment or payment of the claims has been neglected or refused by defendant City of New York.

9. This action is being commenced within one year and ninety days after the happening of the events upon which the claims are based.

## *ADDITIONAL PROCEEDING*

10. On or about January 5, 2024, plaintiff initiated a complaint concerning the incident with the New York City Civilian Complaint Review Board (CCRB), case # 202400161.

11. Plaintiff's CCRB complaint has been pending for more than 14 months and the CCRB still has not yet issued any findings and recommendations.

12. As of this date, the CCRB has failed to interview one of two eyewitnesses to the incident, plaintiff's adult stepdaughter, Ms. Kiana Brown, who along with plaintiff's former wife, Ms. N. Bennett, was present and observed the entire incident.

13. Both plaintiff's adult stepdaughter Ms. Brown and his former spouse Ms. Bennett fully corroborate plaintiff's claim that he was assaulted and arrested by police officers on January 4, 2024, in the 52nd precinct stationhouse, without any justification.

14. Ms. Bennett has so testified before the CCRB.

15. On July 31, 2024, the CCRB investigator assigned to the case, Christian Jett, explicitly stated in a telephone conversation with the undersigned counsel that he was declining to interview Ms. Brown.

16. The CCRB's website states that the complaint was "Pending Board Review" as of October 10, 2024, but was then returned to staff for further investigation and as of October 24, 2024, was marked "Case Investigation Ongoing."

17. CCRB Squad Manager/Supervisor Edwin Pena claimed in a telephone voice mail message of March 13, 2025, to the undersigned counsel that the case was once again "Pending Board Review," but the CCRB website did not so state and in fact does not reflect any new investigative activity of any kind between October 24, 2024, and March 13, 2025.

18. The CCRB website rather stated that on March 13, 2025, the case underwent "Review by investigation case supervisor," and that as of the very next day, March 14, 2025, its status was once again "Case Investigation Ongoing." That status of "Case Investigation Ongoing" remained posted as late as March 19, 2025, although again no new investigative activity of any kind was noted on the website. Then on March 19, 2025, its status was changed again to "Review by investigation team supervisor," and that very same day was changed again to "Pending Board Review."

19. The CCRB website does not reflect any additional civilian interviews since June 12,

2024, despite the undersigned counsel's conversation of July 31, 2024, with Investigator Jett, and the written requests by the undersigned counsel to Investigator Jett on July 31, 2024, August 12, 2024, and February 24, 2025, that the CCRB interview plaintiff's stepdaughter, Ms. Brown, because she corroborates the CCRB testimony of Mr. Delgado's other eyewitness, his former spouse Ms. Bennett.

20. The CCRB website does not reflect any additional investigative action of any kind since the case was originally "Pending Board Review" on October 10, 2024.

21. According to the CCRB website the last investigative actions taken were "Records requested from NYPD" on October 3, 7 and 8, 2024, and the last interviews were all "Officer interviewed" on various dates in August 2024

22. The CCRB website does not reflect any interviews with officials of the Bronx County District Attorney's Office or requests for records from that Office, even though that office declined to charge Mr. Delgado with the two alleged offenses for which he was initially arrested (criminal trespass and obstructing governmental administration) and shortly thereafter acquiesced in dismissal of the two remaining charges (resisting arrest and criminal mischief).

## *JURY DEMAND*

23. Plaintiff demands trial by jury in this action.

## *PARTIES*

24. Plaintiff is a citizen of the United States and a resident of the State of New York.

25. Plaintiff is Hispanic male, age 63 (age 62 at the time of the incident of this lawsuit) and receives Social Security Retirement Benefits.

26. Defendant City of New York operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and

4

discipline of police officers, detectives and supervisory police officers.

27. At all times relevant herein, defendants Doris Miranda, Shield 3167 and Joseph Pacifico, Shield 4577, were NYPD police officers assigned to the 52nd Precinct, 3016 Webster Avenue, Bronx, New York.

28. At all times relevant herein, John and Jane Does 1-10 were NYPD officers or supervisors who participated in, observed, authorized, or failed to report accurately the incident of this lawsuit.

29. At all times relevant herein, defendants Miranda, Pacifico and John and Jane Does 1-10 were acting as agents, servants and employees of defendant City of New York and the NYPD.

30. At all times relevant herein, all defendants were all acting under color of state law.

## FACTS

31. On the evening of January 4, 2024, plaintiff Jose Delgado received a telephone call from his ex-wife, Ms. Bennett, in which she stated that their 15-year-old daughter, Marlee Delgado, had been detained by the police following an altercation at her school, and that she had been asked by police at the 52nd precinct to come to that precinct to pick up their daughter.

32. Ms. Bennett asked plaintiff to meet her at the 52nd precinct, and he agreed to do so.

33. Mr. Delgado arrived at the 52nd precinct ahead of Ms. Bennett, and was ordered by defendant Miranda, the front desk officer, to take a seat in the public waiting area of the precinct.

34. Plaintiff complied with that directive.

35. At no time did plaintiff Delgado violate that directive by moving to any other area of the 52nd precinct.

36. Shortly thereafter Ms. Bennett arrived, accompanied by plaintiff's adult stepdaughter, Ms. Kiwana Brown.

37. Plaintiff, Ms. Bennett and Ms. Brown all took seats in the public waiting area of the 52nd precinct and awaited the release of Marlee.

38. After a waiting period of approximately 2-2½ hours, they heard Marlee being escorted by police officers.

39. Mr. Delgado, Ms. Bennett and Ms. Brown all heard Marlee repeatedly crying out "stop, stop, you're hurting me," as she was being escorted by police officers.

40. Plaintiff Delgado could not see Marlee, who was somewhere to his right and further inside the precinct, so he moved to his left in an effort to observe what was happening and expressed verbal concern over his daughter's cries that she was being hurt.

41. At no time did plaintiff attempt, physically, verbally, or in any other manner, to interfere with or obstruct the officers who were escorting Marlee.

42. Suddenly and without any warning, as plaintiff Delgado was trying to ascertain what was happening to his daughter, plaintiff was assaulted by several police officers.

43. Mr. Delgado was attacked by at least four to five police officers: they physically picked him up and threw him against the front door of the precinct, in an apparent effort to eject him from the precinct rather than arrest him.

44. The precinct front door had glass and bars, and plaintiff's head was hit against the door, causing the glass to shatter and the bars to bend.

45. Mr. Delgado was then thrown to the floor and the officers punched and stomped on

him, kicking him, cursing him, and putting their knees on his back.

46. Plaintiff Delgado was then picked up and thrown into a cell.

47. Both Ms. Bennett and Ms. Brown complained that plaintiff had done nothing wrong and objected to the assault upon plaintiff.

48. Ms. Bennett attempted to record on her I-phone what was being done to plaintiff, but she was threatened with force if she did not stop recording, by an officer who also spoke discourteously to her and called her by a gender-offensive epithet.

49. A separate CCRB complaint filed by Ms. Bennett on the date of the incident, January 4, 2024 (case # 202402711), resulted in a determination on October 17, 2024, that did not dispute the facts of the complaint but rather closed the matter as "Officer(s) Unidentified."

50. The CCRB website for Ms. Bennett's complaint does not reflect that any officer was interviewed or that any NYPD records or video evidence was requested.

51. The CCRB letter informing Ms. Bennett of the disposition, dated November 27, 2024, reflects that squad manager for Ms. Bennett's complaint was Edwin Pena, the same supervisor in charge of Mr. Delgado's CCRB complaint.

52. Both Ms. Bennett and Ms. Brown observed the entire incident.

53. Both Ms. Bennett and Ms. Brown are of the view that plaintiff did not do anything illegal.

54. Both Ms. Bennett and Ms. Brown believe that the officers' conduct in assaulting plaintiff and arresting plaintiff was entirely unwarranted and illegal.

55. The officers subsequently transported plaintiff to Bronx Central Booking.

56. The file of the Legal Aid Society Bronx Criminal Practice reflects that the "Arrest Charges" submitted by the police attempted to charge plaintiff with "Attempted Obstruct Governmental Administration - 2nd Degree" (PL §195.05, a Class B Misdemeanor) and "Criminal Trespass 3rd: Property Fenced in or Enclosed" (PL §140.10, a Class B Misdemeanor).

57. The Bronx District Attorney's Office declined to prosecute plaintiff for obstructing governmental administration or criminal trespass.

58. The Bronx District Attorney's Office did allow the filing of a criminal court complaint accusing plaintiff of Resisting Arrest (PL §205.30, a Class B Misdemeanor), and also accusing him of Criminal Mischief in the 4th degree (intentional damage of another person's property, PL §145.00 (1), a Class A Misdemeanor), due to the damage to the precinct door. (The police had sought to charge plaintiff with "Attempted Criminal Mischief 3rd: Damage to Another Person's Property -- Amount & gt $250" (PL §145.05 (2), a Class E Felony, albeit reduced to a Class A Misdemeanor because of "attempt.")

59. The complaint was signed by defendant Pacifico, and was accompanied by a supporting affidavit signed by defendant Miranda, both dated January 5, 2024, at 1:39 P.M.

60. The complaint falsely claimed that plaintiff had allegedly entered the "lactation room" of the 52nd precinct and was allegedly kicking the walls of that room, and also falsely claimed that when plaintiff was allegedly flailing his arms in an attempt to avoid being handcuffed by defendant Miranda, he had struck the front door of the precinct causing damage to the glass and bars of that door.

61. Had the Bronx District Attorney's Office believed the allegation that plaintiff

8

entered an area of the precinct where he was not permitted to be, it would not have declined prosecution on the charge of criminal trespass alleged by the police.

62. Had the Bronx District Attorney's Office believed the allegation that plaintiff was kicking walls, or doing or saying anything else that interfered with the conduct of police business at the precinct, it would not have declined prosecution on the charge of obstructing governmental administration alleged by the police.

63. Plaintiff was arraigned in Bronx Criminal Court several hours later on January 5, 2024, and was released on his own recognizance.

64. Plaintiff had to appear in Bronx Criminal Court again on March 11, 2024, at which time the case was adjourned to April 11, 2024.

65. On April 11, 2024, less than 100 days after the arrest, two remaining charges were dismissed on speedy trial grounds (CPL §30.30) without objection by the Bronx District Attorney's Office.

66. Since there was no probable cause to arrest plaintiff for obstructing governmental administration and criminal trespass, even if he had resisted arrest he would have been entitled to do so since it is black letter law in New York State that an individual is lawfully entitled to resist an unauthorized arrest. *People v. Peacock*, 68 N.Y.2d 675 (1986); *Ashanti v. City of New York*, 225 A.D. 3d 443 (1st Dept. 2024).

67. The criminal mischief charge was also dismissed because the police themselves had caused the damage to the precinct door due to the manner in which they had manhandled plaintiff.

68. As noted in ¶¶ 10-22, above, the CCRB has interviewed Ms. Bennett but has not

interviewed Ms. Brown, a second eyewitness who fully corroborates Ms. Bennett's CCRB testimony that plaintiff did not do anything illegal, and that the officers' conduct in assaulting plaintiff and arresting plaintiff was entirely unwarranted. (The only civilian interviewed by the CCRB other than Ms. Bennet is Marlee, but she did not observe the assault by the police.) The CCRB also has not interviewed any officials of the Bronx County District Attorney's Office or requested any records from that Office, even though that Office declined to charge Mr. Delgado with the two alleged offenses for which he was initially arrested (criminal trespass and obstructing governmental administration) and shortly thereafter acquiesced in dismissal of the two remaining charges (resisting arrest and criminal mischief).

## FIRST CLAIM FOR RELIEF

69. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-68.

70. Defendants Miranda, Pacifico and John and Jane Does 1-10, by their conduct toward plaintiff alleged herein, violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the Fourth, and Fourteenth Amendments to the Constitution of the United States, Article I, §§ 1, 6, 11 and 12 of the Constitution of the State of New York, and the laws of the State of New York and the City of New York.

## SECOND CLAIM FOR RELIEF

71. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-68 and 70.

72. The conduct toward plaintiff alleged herein constituted false arrest, malicious prosecution, unnecessary and excessive use of force, and employee negligence.

73. The conduct toward plaintiff alleged herein subjected him to trauma, shock,

debasement, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering.

### *THIRD CLAIM FOR RELIEF*

74. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-68, 70, and 72-73.

75. At all times relevant herein, the individual defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law, city law and Article I, §§ 1, 6, 11 and 12 of the Constitution of the State of New York.

### *PRAYER FOR RELIEF*

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against all individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        March 21, 2025

**JOEL BERGER**
675 Third Avenue, 8th Fl.
New York, New York 10017
joelberger1955@yahoo.com
(212) 687-1425

**ATTORNEY FOR PLAINTIFF**